This memorandum is uncorrected and subject to revision before
publication in the New York Reports.
-----------------------------------------------------------------

No. 93
Sharen Branch, &c.,
          Appellant,
        v.
County of Sullivan,
          Respondent.



          Michael H. Sussman, for appellant.
          Bryan R. Kaplan, for respondent.




MEMORANDUM:

          The order of the Appellate Division should be affirmed,

with costs.

          In the early morning hours of November 8, 2007,

18-year-old Robert Bastian (decedent) was socializing with fellow

- 1 -

students in the dormitory where he resided on the campus of Sullivan County Community College (SCCC or the College) when he experienced sudden cardiac arrest and died. In January 2009, plaintiff Sharen Branch, decedent's mother and the administratrix of his estate, commenced this wrongful death action against defendant Sullivan County (the County); she alleged that the County negligently failed to equip decedent's dormitory with an automated external defibrillator and/or to have an emergency medical response plan in place. The County is SCCC's local sponsor. A community college's local sponsor assumes three responsibilities and duties: (1) to formulate a plan for establishing the college; (2) to partially finance the college's capital and annual operating costs; and (3) to hold title to the college's real property in trust for its exclusive use and purposes, as determined by its board of trustees (see 8 NYCRR 604.1; see generally Education Law article 126).

After joinder of issue and discovery, the County moved for summary judgment to dismiss the complaint, arguing that it owed no duty of care to decedent because it did not own or manage SCCC, or own, manage or maintain the dormitory where he was living when he fell ill. In support of its motion, the County submitted deeds showing that the Sullivan County Community College Dormitory Authority (the Dormitory Authority), a not-for-profit corporation, owned the dormitory where decedent resided. The County also submitted the deposition testimony and affidavit

of the Sullivan County Treasurer, who averred that while the
County "provide[d] economic support for [SCCC's] budget," it
played "no role in the management, policy making decisions [or]
day[-]to[-]day operations" of either SCCC or the dormitory.  As
particularly relevant to its motion, the County noted that
Education Law § 6306 (5) assigns responsibility for management of
a community college's buildings and facilities to its board of
trustees.*

Plaintiff, in opposition to the County's motion,
submitted an affirmation from counsel, accompanied by a
memorandum of law.  Plaintiff argued that because SCCC was a
"department" of the County, the County was liable for the
College's negligent failure to place a defibrillator on campus;
plaintiff also argued that the County, as the owner of the real
property on which the College's facilities sit, assumed a duty to
provide for the safety of SCCC's students and breached that duty
by not "insur[ing] that [the] property was equipped with
defibrillators or that the capital or operating budgets which

---

*Each community college is governed by a board of trustees
with 10 members; 5 members are appointed by the local sponsor, 4
members are appointed by the governor, and 1 member is a student
elected by the students of the college (Education Law § 6306
[1]).  The board of trustees of a community college is
responsible for "the care, custody, control and management of the
lands, grounds, buildings, facilities and equipment used for the
purposes of [the] college and of all other property belonging to
[the] college and used for carrying out its purposes, [and] shall
have power to protect, preserve and improve the same" (Education
Law § 6306 [5]).

[the County] annually reviewed, and had to approve, contained appropriations for the purchase of the same and the training of staff in their use."

Noting that the affirmation by plaintiff's counsel was "conclusory" and merely repeated the complaint's allegations, Supreme Court concluded that plaintiff had not raised any triable issue of fact to rebut the County's prima facie showing of entitlement to summary judgment, and so granted the County's motion and dismissed the complaint. Upon plaintiff's appeal, the Appellate Division affirmed (112 AD3d 1119 [3d Dept 2013]). The court rejected plaintiff's argument that the County's role as local sponsor somehow made SCCC an "alter ego of [the County, which] should be treated as a department of [the County] for liability purposes" (id.). The Appellate Division emphasized that the College's board of trustees, not the County, was responsible for day-to-day operations and management at SCCC. Moreover, the court observed, the County did not own the building where decedent was fatally stricken down, and "in the absence of ownership, occupancy, control or special use of the property by [the County], it did not owe decedent a duty" (id. at 1120). We granted plaintiff leave to appeal (23 NY3d 905 (2014), and now affirm.

While the County exercises significant influence and control over SCCC's finances, only the College's board of trustees is authorized to manage SCCC's facilities; therefore, it

alone is charged with the duty of care (see Jackson v Board of Educ. of City of N.Y., 30 AD3d 57, 60-61 [1st Dept 2006]); see also Matter of Weinstein v Caso, 44 AD2d 690 [2d Dept 1974]). And here, the County additionally established that it did not even own the dormitory where decedent's accident occurred (see Jackson, 30 AD3d at 60 ["(l)iabilty for a dangerous condition on property may only be predicated upon occupancy, ownership, control or special use of such premises"] [internal quotation marks and citation omitted]).  Plaintiff also argues that the College's  trustees are officers of the County, which is therefore liable for their negligent acts pursuant to County Law § 53; and that the County's transfer of the dormitory to the Dormitory Authority was invalid.  These theories of liability, which were not advanced in Supreme Court, are unpreserved for our review.

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

Order affirmed, with costs, in a memorandum.  Chief Judge Lippman and Judges Read, Pigott, Rivera, Abdus-Salaam and Fahey concur. Judge Stein took no part.

Decided June 9, 2015